JAMES H. LYONS v. DAVID V. YEREX.

*Life insurance—Policy payable to heirs at law of insured—Rights of widow.*

1. Under the statutes of this State, the widow takes a share of the personal property of her husband as distributee, and not as dowress, and is an heir as to such property.

2. On the death of a member of a mutual benefit or co-operative life-insurance company, who dies intestate, and whose policy of insurance is made payable to his "heirs at law," the widow is entitled to share in the proceeds of said policy.

Error to Lapeer. (Moore, J.) Argued February 15, 1894. Decided May 18, 1894.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*W. E. Brown* (*Cahill & Ostrander*, of counsel), for appellant.

*Geer & Williams,* for defendant.

McGrath, C. J. On the 30th day of September, 1887, there was issued to Harrison H. Lyons a certificate of membership in the Northwestern Masonic Aid Association, a mutual benefit or co-operative insurance company, which was made payable "to the heirs at law of the said Harrison H. Lyons." The insured died intestate, leaving a widow and one son. By agreement the money was paid over to defendant, who paid one-half thereof to plaintiff, who now sues to recover the balance, claiming that the widow is not entitled to share in the proceeds of the policy.

Under our statute the widow takes a share of the personal property of her husband as distributee, and not as dowress, and is an heir as to such property. In *Hascall v. Cox,* 49 Mich. 435, 440, it is said:

"'Heirs' is a technical word, and when it is made use of in any legal instrument there is a presumption, more or less strong, according to the circumstances, that it is employed in a technical sense. * * * But in common speech the word is frequently used to indicate those who come in any manner to the ownership of any property by reason of the death of an owner, and may then include next of kin and legatees as well as those who take by descent. And in wills, which are often very informal instruments, and drawn without legal assistance, the word is sometimes employed with quite as little regard to the technical sense."

In the present case we are not considering the use of the word in a will, but in a contract of insurance, in which the insured has used the word to designate the beneficiaries. In determining the signification of words used in any case we are to consider all the surrounding circumstances. The original purpose of such contracts on the part of the insured is to make provision for dependents. It is most probable that the insured was actuated by the motive which ordinarily prompts men to take out

insurance.   The common  acceptation of the term  "heir"
has already been  referred to.   The statute makes the widow
an heir as to personal property, and the wife is within the
class of persons  protected  and  sought to be protected by
this class of insurance.

In. *Tillman v. Davis,* 95 ·N. Y. 17, cited by plaintiff,
the court was construing a will in which the testatrix was
dealing with both real and personal property, and the
court held that the word "heirs" was used to designate
blood relations.

In *Griswold v. Sawyer,* 125 N. Y. 411, it was held that
the term "legal representatives," as used in a life-insur-
ance policy, includes the widow.   The opinion was written
by the same justice who wrote *Tillman v. Davis.*   The
court say:

"Mr. Griswold was not a lawyer, and hence cannot be
supposed to have used these words in their strict, tech-
nical, legal sense, but it is reasonable to suppose that he
used them in the general sense in which they are fre-
quently used and generally understood by laymen."

In *Kaiser v. Kaiser,* 13 Daly, 522, it was held that the
words "legal heirs," used in a certificate of membership in a
mutual insurance association, include the widow.   Book-
staver, J., says:

"We think all this entirely inconsistent with the theory
that he used the phrase 'legal heirs' in its ordinary
acceptation, but we think that he intended thereby to
designate his wife and children, if he should leave any;
and this is the meaning often attached to the phrase by
the unlearned, especially when only personal property is
concerned."

*Gauch v. Insurance Co.,* 88 Ill. 251, is also cited, but
the court there held that under the statute the widow did
not take an interest in her husband's personal property as
a distributee, but as dowress.

In *Lawwill v. Lawwill,* 29 Ill. App. 643, decedent held

a policy in the Masonic Benevolent Association, payable to his legal heirs. He died, leaving a widow, but no children. The statute provided that, in case the husband died without issue, the widow should take all the personal property. The court held that the widow was within the contingencies specified in the statute, and was the heir at law to his estate, and that the word "heirs," when uncontrolled by the context, must be construed to mean the persons designated by the statute as such in case of intestacy. See, also, *Association v. Hoffman*, 110 Ill. 603, and *Alexander v. Association*, 126 Id. 558.

In *Johnson v. Knights of Honor*, 53 Ark. 255, 260, Battle, J., says:

"Suffice it to say that the weight of authority holds that the word 'heirs,' when used in any instrument to designate the persons to whom personal property is thereby transferred, given, or bequeathed, and the context does not explain it, means those who would, under the statute of distribution, be entitled to the personal estate of the persons of whom they are mentioned as heirs, in the event of death and intestacy. * * * In many states where the widow is entitled to take under the statute of distribution she is held to be an heir of her deceased husband as to his personal estate, but it is different in this state. * * * It is true that section 2592, Mansf. Dig., provides: 'If a husband die, leaving a widow and no children, such widow shall be endowed of one-half of the real estate of which such husband died seised, and one-half of the personal estate, absolutely and in her own right.' But she takes the one-half of the personal estate as dower, absolutely and independently of creditors, and not as a distributive share."

In *Bailey v. Bailey*, 25 Mich. 185; *Barnett v. Powers*, 40 Id. 317; *Richardson v. Martin*, 55 N. H. 45; *Ivins' Appeal*, 106 Penn. St. 176; *Luce v. Dunham*, 69 N. Y. 36; *Dodge's Appeal*, 106 Penn. St. 216,—the property with reference to which the word was used was real estate. In the last-mentioned case, Sterrett, J., in the opinion, says:

"If the fund for distribution were personalty, the widow would perhaps be entitled to participate therein."

In *De Beauvoir v. De Beauvoir*, 3 H. L. Cas. 524, the property devised was both real and personal. The court say:

"On the face of the will it was the intention of the testator to make the two funds a blended property, and to give them the character of real estate, and to make both properties go together."

Nibl. Mut. Ben. Soc. § 247, says:

"At common law one's heirs are the persons who would inherit his real estate by right of blood. The statutes of adoption and those of descent have, in every state, to a greater or less degree, enlarged the meaning of the word, so that it may include persons not of the blood of the intestate. At common law the word had no reference to the distribution of any personalty, and this rule has not been disturbed by statute in some states. In those states, therefore, where this common-law rule obtains, the word 'heirs,' in a statute setting forth a class of persons who may take the fund, or in a certificate designating the persons who shall take the fund on the member's death, must be taken to mean the person or persons to whom the real estate of the member will pass under the statutes of descent, whether such person or persons be akin to him or not. In most states, however, the statutes provide not only who shall inherit the realty of an intestate, but also who shall be the heirs of his personal property."

The same author, at section 248, says:

"Nothing is more natural, therefore, than to regard the heirs of the intestate's personal property as the beneficiaries designated in the contract of insurance as 'my heirs.'"

See *Houghton v. Kendall*, 7 Allen, 72; *White v. Stanfield*, 146 Mass. 424; *Addison v. Association*, 144 Id. 591; *Collier v. Collier*, 3 Ohio St. 369; *Eby's Appeal*, 84 Penn. St. 241; *Freeman v. Knight*, 2 Ired. Eq. 72; *Insurance Co. v. Miller*, 13 Bush, 489; *Wilburn v. Wilburn*, 83 Ind.

55; *Gosling v. Caldwell*, 1 Lea, 454; *Ward v. Saunders*, 3 Sneed, 387; *Croom v. Herring*, 4 Hawks (N. C.), 393.

Under the circumstances, we think it must be presumed that by the use of the words "my heirs" the insured intended to include those designated by the statute as such, and to whom the law would give that class of property in case of intestacy.

The judgment must therefore be affirmed.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. LONG, J., did not sit.