. IRA A. SMITH *et al.* Appellees, *vs.* ALBERT W. WINSOR *et al.*
Appellants.

*Opinion filed April 23, 1909.*

1. WILLS—*when heirs-at-law take a vested remainder.*   Where
a devise is to the testator's wife for life with power to dispose of
the property by deed and to re-invest or loan the proceeds or use
the same for her comfort or advantage or for charitable purposes,
with remainder, if any, to the testator's "heirs-at-law," the per-
sons designated by the testator as "heirs-at-law" will take a vested
remainder, subject to its being defeated by the wife's exercise of
her power of disposition.

2. SAME—*when widow is within strict legal meaning of term*
*"heirs-at-law."*   In Illinois, when a resident dies leaving real es-
tate in Illinois and leaving a widow but no descendants, the widow
is an "heir-at-law" within the strict legal meaning of that term,
although in its colloquial or popular sense it is not ordinarily un-
derstood as including the widow.

3. SAME—*effect where life tenant is an heir and remainder is*
*to "heirs."*   Where a will devises land to a certain person for life
with remainder to the testator's "heirs," the mere fact that the life
tenant is an heir does not, unless he is the sole heir, establish an
intention on the part of the testator to exclude the life tenant from
the heirs who will take the remainder.

4. SAME—*when widow will not take as "heir-at-law."*   Where
it appears from the whole will that the testator intended his wife
to have the use of his property for life with power to convey the
same and re-invest or loan the proceeds or use the same for her
comfort and advantage or for charitable purposes, the remainder,
if any, to go to the testator's "heirs-at-law," but if the wife pre-
deceased the testator the property was to go to his "heirs-at-law,"
the term "heirs-at-law" will be regarded as used in its popular
sense, and will not include the widow although she survives the
testator, who left no descendants.

APPEAL from the Superior Court of Cook county; the
Hon. FARLIN Q. BALL, Judge, presiding.

This is an appeal by Albert W. Winsor and others from
a decree of the superior court of Cook county. The court
overruled their demurrer to a bill for partition filed by Ira

A. Smith and others, appellees, in that court. Appellants elected to stand by their demurrer, and the decree was entered against them *pro confesso* for want of answer.

It appears from the bill that Augustus W. Winsor, Jr., late of the city of Chicago, died testate on or about January 13, 1904; that at the time of the execution of his last will and at the time of his decease he was a resident of this State, seized in fee simple of certain real estate in the city of Chicago and owner of a considerable amount of personal property, and that his will was duly admitted to probate in Cook county on June 16, 1904. The will, after providing for the payment of the testator's debts and the erection of a monument, contained the following provisions:

"*Third*—I give, devise and bequeath to my dear wife, Ella A. S. Winsor, in case she shall survive me, all of my real estate and all my personal property that I shall die seized or possessed of at the time of my death, wherever situated and however described, to have and to hold the same for and during her natural life, with full and complete power, however, to sell and convey all or any part of such real estate or personal property for such price or consideration as she shall deem adequate, and to re-invest the proceeds of such sale or sales in other real estate, or to loan the same, or to use and employ the same, or any part thereof, in any other way she shall desire for her comfort or advantage, or, in her discretion, to use or dispose of the same for such charitable purposes as she shall deem worthy; at and upon her death the remainder of said estate, if any, to descend to my heirs-at-law in the proportion as designated and provided by the statutes of the State of Illinois. The purchaser of any such real estate or personal property shall not be required to see to the use or application of such purchase money, nor shall my said wife be required or obligated to account to anyone for the use or disposition of such estate or any part thereof, or the proceeds arising from any sale thereof.

"*Fourth*—I will and direct that in case my wife shall not survive me, then and in that case all of my estate, both personal and real, wherever situated and however described, subject to the directions made in the first and second clauses hereof, shall descend to my heirs-at-law in the proportion designated and provided in the statutes of the State of Illinois."

The deceased was without descendants, but he left surviving him Ella A. S. Winsor, his widow, two brothers, a sister and two nephews, sons of a deceased brother, his only heirs-at-law. One of the brothers has since departed this life testate, devising his interest in the realty of Augustus W., Jr., to the sister. The remaining brother, the sister, said nephews, with certain others, were made defendants.

About two weeks after the death of Augustus W., Jr., his widow died intestate, without descendants and without having executed any of the powers conferred upon her by the will. She left surviving her as her only heirs-at-law, Ira A. Smith, Winfield S. Smith and Henry C. Smith, her brothers. The latter has since died, and all his property passed under his will to his widow, Zerelda Smith. The two brothers surviving and the widow of Henry C. were complainants. By their bill they claim through the widow of Augustus W., Jr., a one-half interest in all of the real estate owned by him at the time of his decease and seek partition.

Appellees' position is, that by the term "heirs-at-law" the testator included his wife; that she was given a life estate (with certain powers over the fee) in his real property, and, subject to that life interest, a vested remainder in the one-half of his real estate, which vested remainder, upon her death intestate, passed to her heirs-at-law, making them the owners of one-half of the real estate of which the husband died seized.

It is contended by appellants, who were defendants to the bill, that Ella A. S. Winsor took only a life estate (with

certain powers over the fee,) in the real estate of the deceased; that it is clearly manifest from the will that the intention of the testator, in using the term "heirs-at-law," was to designate heirs of his blood and exclude his wife, so that, subject to her life estate, all his real estate passed to his heirs who were of his own blood, and that the court erred in overruling the demurrer.

WILSON, MOORE & McILVAINE, and RANDALL W. BURNS, (N. G. MOORE, of counsel,) for appellants Albert W. Winsor and others:

Ordinarily the words "heirs" or "heirs-at-law" are used to designate those persons who answer this description at the death of the testator. *Rawson* v. *Rawson,* 52 Ill. 62; *Kellett* v. *Shepard,* 139 id. 433; *Abbott* v. *Bradstreet,* 3 Allen, 587.

This construction is, however, bound to give way to the intention of the testator as expressed in his will, and will then mean those persons who shall be his heirs-at-law at some subsequent time or at the period of distribution. *Kellett* v. *Shepard,* 139 Ill. 433; *Johnson* v. *Askey,* 190 id. 58; *Abbott* v. *Bradstreet,* 3 Allen, 587.

Where there is a gift to a person for life with remainder to the testator's next of kin, and the person taking the life estate is the sole next of kin at the death of the testator, the remainder will be considered as given to the persons answering the description at the termination of the life estate. *Johnson* v. *Askey,* 190 Ill. 58; *Abbott* v. *Bradstreet,* 3 Allen, 587; *Fargo* v. *Miller,* 150 Mass. 225; *Bailey* v. *Bailey,* 25 Mich. 185; *Russing* v. *Russing,* 25 Ind. 63; *Jones* v. *Colbeck,* 8 Ves. 38; *Long* v. *Blackal,* 3 id. 486; *Furenes* v. *Sievertson,* 102 Iowa, 322; *Bond* v. *Moore,* 236 Ill. 576.

The gift of this life estate with power over the whole property evidences an intent that the remainder, if any, at the wife's decease should go to others, even if that estate be

held to vest at testator's death. *Jones* v. *Lloyd,* 33 Ohio St. 572; *Lord* v. *Bourne,* 63 Me. 368; *Henderson* v. *Henderson,* 46 N. C. 221.

In such a will the term "heirs-at-law" is used in a colloquial or popular sense, and this would not include the widow, *Bailey* v. *Bailey,* 25 Mich. 185; *Gauch* v. *Insurance Co.* 88 Ill. 251; *Wood* v. *Metcham,* 92 N. Y. 375; Kent's Com. (11th ed.) 535; *VanKleck* v. *Dutch Church,* 20 Wend. 457; *Quinn* v. *Hardenbrook,* 54 N. Y. 86; *Scott* v. *Guernsey,* 48 id. 105; *Kelso* v. *Lorillard,* 85 id. 182; *Brown* v. *Harmon,* 73 Ind. 412; *Fletcher* v. *Holmes,* 32 id. 497; *Unfried* v. *Heberer,* 63 id. 67; *Irvin's Appeal,* 106 Pa. 176; *Richardson* v. *Martin,* 55 N. H. 45.

SIMEON STRAUS, and IRA E. STRAUS, for appellants Jacob M. and Rose Schimberg, Moses E. Greenebaum and James E. Greenebaum:

The widow is the sole heir-at-law of personal estate, and is entitled to the whole of the personal estate where there is a widow and no child or children or descendants of a child or children of the deceased. Rev. Stat. chap. 31, sec. 1, par. 3.

The fact that a testator includes real estate and personal property in the same sentence of the residuary clause indicates that he intended the residuary devisees to take the same estate in the land which they take in the personal property. *Webbe* v. *Webbe,* 234 Ill. 442; *Leiter* v. *Sheppard,* 85 id. 242; *Giles* v. *Anslow,* 128 id. 187.

Where it is evident that the testator contemplated that his estate would be converted into money by the life tenant, and that whatever of his estate remained at her death would be converted estate and should descend to his heirs-at-law, then the same rule of construction should apply as in cases where a conversion of his estate is directed, and in such case the period of distribution is the time when the heirship is to be ascertained, and the heirs-at-law take a

contingent and not a vested interest. *Barnes* v. *Johnston,* 233 Ill. 620; *Banta* v. *Boyd,* 118 id. 186; *Ebey* v. *Adams,* 135 id. 80; *Ridgeway* v. *Underwood,* 67 id. 419.

Where, considering all the provisions of the will, it was manifestly the paramount intention of the testator to provide fully for his wife before disposing of the remainder of his estate, the express provisions of the will for her benefit will be held to mean that she shall have so much, and no more, of his estate. *Furenes* v. *Sievertson,* 102 Iowa, 322; *Bailey* v. *Bailey,* 25 Mich. 185.

Where testator's intention is plainly manifested it must prevail. *Abbott* v. *Bradstreet,* 3 Allen, 589.

MUSGRAVE, PLATT & LEE, for appellees:

Where a will devises and bequeaths property to A for life and at her death to descend to testator's heirs-at-law, the term "heirs-at-law," as so used, refers to the persons who are the heirs of the testator at the date of his death, and not to such persons as answer that description at the date of the death of the life tenant. And the fact that the life tenant is one of the heirs in no way alters the above principle. Kales on Future Interests, pars. 233, 234; Theobald on Wills, (2d ed.) 280, 281; 29 Am. & Eng. Ency. of Law, (1st ed.) 419, note 1; 2 Jarman on Wills, (6th ed.) 142, 143; *Holloway* v. *Holloway,* 5 Ves. Jr. 399; *Bullock* v. *Downs,* 9 H. L. Cas. 1; *Doe* v. *Maxey,* 12 East, 589; *Lasbury* v. *Newport,* 9 Beav. 376; *Urquhart* v. *Urquhart,* 13 Simons, 613; *Seifferth* v. *Badham,* 9 Beav. 370; *Ware* v. *Rowland,* 15 Simons, 587; *Nicholson* v. *Wilson,* 14 id. 549; *Gorbell* v. *Davison,* 18 Beav. 556; *Bird* v. *Luckie,* 8 Hare, 301; *Patten* v. *Sparks,* 72 L. T. 5; *Kellett* v. *Shepard,* 139 Ill. 433; *Clark* v. *Shawen,* 190 id. 47; *Allison* v. *Allison,* 101 Va. 537; *Abbott* v. *Bradstreet,* 3 Allen, 587; *Rotch* v. *Rotch,* 173 Mass. 125.

To the above general rule there was under the very early English cases, and is at present under the law of Illinois and

of several other jurisdictions, one well recognized exception, namely, that where the gift is to a person for life with remainder to the testator's heirs-at-law, and such life tenant is the sole heir, the devise will mean heirs at the date of the death of the life tenant. Kales on Future Interests, par. 233; *Johnson* v. *Askey,* 190 Ill. 58; *Bond* v. *Moore,* 236 id. 576; *Abbott* v. *Bradstreet,* 3 Allen, 587; *Rusing* v. *Rusing,* 25 Ind. 63; *Bailey* v. *Bailey,* 25 Mich. 185.

In order to work a conversion while the property is yet actually unchanged in form, there must be a clear and imperative direction in the will to sell the land for money or to lay out money in the purchase of land. *Richards* v. *Miller,* 62 Ill. 417; *Haward* v. *Peavey,* 128 id. 430; *Ducker* v. *Burnham,* 146 id. 9; *Dorsey* v. *Dodson,* 203 id. 32; *Hale* v. *Hale,* 125 id. 399; Pomeroy's Eq. Jur. par. 1160; *Mills* v. *Harris,* 10 S. E. Rep. 704; *Clarke's Appeal,* 70 Conn. 195; *Hunt's & Lehmann's Appeals,* 105 Pa. St. 128.

Where real and personal property is referred to in the same clause of a will in such a manner as to indicate that the testator intended to blend the property, and where, as in the case at bar, the testator devises the said property to his heirs, as distinguished from his next of kin, then the whole property as so blended will go to the persons who would have taken the real estate. *Allison* v. *Allison,* 101 Va. 537; *DeBeauvoir* v. *DeBeauvoir,* 3 H. L. Cas. 524; *Gwynne* v. *Murdoch,* 14 Ves. 488; *Forrest* v. *Porch,* 100 Tenn. 391; 4 Kent's Com. 537; Schouler on Wills, (2d ed.) secs. 542, 547; 2 Jarman on Wills, (5th Am. ed.) 82, 62; 2 Williams on Executors, 385.

The word "heir," when used in a will, will be held to apply to those persons designated as such by the statute in case of intestacy, unless the intention of the testator to use said words in some other sense is plainly mainfested in the will. *Kellett* v. *Shepard,* 139 Ill. 433; *Clark* v. *Shawen,* 190 id. 47; *Richards* v. *Miller,* 62 id. 417; *Rawson* v. *Rawson,* 52 id. 62; *Kelley* v. *Vigas,* 112 id. 242; *Alexander* v.

*Aid Society,* 126 id. 558; *Kirkpatrick* v. *Kirkpatrick,* 197 id. 144; *Allison* v. *Allison,* 101 Va. 537; *Tuttle* v. *Woolworth,* 50 Atl. Rep. 445; *Buzby's Appeal,* 61 Pa. St. 111.

The law in Illinois is well settled, and has been for the last forty years, that where a person dies leaving no child or children, the surviving widow or husband is an heir, within the meaning of the statutes of this State. *Richards* v. *Miller,* 62 Ill. 417; *Rawson* v. *Rawson,* 52 id. 62; *Alexander* v. *Aid Society,* 126 id. 558; *Sutherland* v. *Sutherland,* 69 id. 481; *Sutherland* v. *Harrison,* 86 id. 363.

The meaning of such words is in this State so definitely settled that parol evidence is not admissible to explain or modify such meaning. *Richards* v. *Miller,* 62 Ill. 417; *Kelley* v. *Vigas,* 112 id. 242.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The question is, what intention of the testator is evinced by the words used in his will?

These propositions are clear:

*First*—The widow took a life estate in all the property of the deceased, with a limited power to dispose of the fee or corpus of the property.

*Second*—The persons whom the testator designated in the third clause of his will by the words "my heirs-at-law" took a vested remainder in all his property, which was liable to be defeated, in whole or in part, by the exercise of the power of disposition possessed by the widow.

*Third*—Upon the death of a man who is a resident of Illinois, without descendants, leaving a widow, and being at the time of his death possessed of real estate in Illinois, his widow is, according to our law, one of his heirs-at-law, within the strict legal sense of that term.

*Fourth*—Where the testator uses in his will the expression "heirs-at-law" those words are to be given their technical meaning, unless, upon the reading of the entire will, it plainly appears that they were used in a different sense.

The only question remaining for determination is, did the testator by the words "heirs-at-law," as used in the third clause of his will, intend to exclude his widow and include only those heirs-at-law who were of his own blood? In determining this question the will must be read from the four corners thereof, and while in this case the meaning of the words in question, in their legal sense, includes the widow, yet in the colloquial or popular sense the words are not ordinarily understood as including her. Appellees cite a number of cases, beginning with *Holloway* v. *Holloway*, 5 Ves. Jr. 399, holding that where a will devises and bequeaths property for life to one who is an heir of the testator, with remainder to the heirs of the testator, the mere fact that the life tenant is to have the use of all the property during life is not to be regarded as an indication that the testator intended to exclude the life tenant from among his heirs-at-law who would take the remainder. Appellants cite a number of cases which they regard as holding the contrary. We think the weight of authority establishes the rule for which the appellees contend. From *Johnson* v. *Askey*, 190 Ill. 58, it appears that there is an exception to this rule where the life tenant is the sole heir and the remainder is devised to "heirs" of the testator. In such case, persons who take as heirs are those who answer the description upon the death of the life tenant, the latter being excluded.

We do not regard the case at bar as falling within that exception,—at least not so far as the real estate is concerned, which, alone, is involved in this suit. If there was nothing in this will except the fact that the widow was given a life estate in all the property upon which to base an argument that she was not to take an interest in the realty as a remainder-man the authorities cited by appellees would require an affirmance of the decree. But we think there is something more. The will presents a double aspect, in that it provides for the contingency of the testator

surviving his wife and for the contingency of the wife surviving the testator. By the fourth clause, if the testator survived, then the property, at his death, was to go to his heirs-at-law, which would exclude from all share therein the heirs of his wife. By the third clause, which provides for the disposition of the property in the event the wife survived, the wife had the use of all the property so long as she lived. She had unlimited power to sell and re-invest the proceeds. She had the right to use and enjoy the proceeds of any sale in any way she should desire for her comfort or advantage, or to use the same for any charitable purpose that she deemed worthy. Her power to consume the property for her own support, comfort and enjoyment was unlimited. Her power to dispose of it for such charitable purposes as she should deem worthy was unlimited, but she was not by the will granted any power to make a gift of the property for other than such charitable purposes or to dispose of it by will for any purpose whatever. So far as the use of the property for her own support and comfort and the gratification of her wishes to contribute to charitable purposes which she deemed worthy was concerned, her right was not less than it would have been had she been given the absolute fee.

It seems to us, the intent of the testator, stated in general terms, was this: that the property be used and disposed of, to the fullest extent, for the purposes of himself and wife so long as they lived, provided, only, that in the event his wife survived him she should not have the power to give the property away except to a charity deemed worthy by her and she should not have the power to dispose of it in any manner by will; that, subject to such use and disposition of the property by himself and his wife, it should pass to his heirs-at-law who were of his blood. On appellees' theory of the case, his purpose was to so devise and bequeath his property as that when he and his wife had both passed away, that which remained would go to

his blood in case he survived his wife, but if he did not survive his wife, then, subject to the use and disposition his wife might make of the property, a large portion of it should pass to the heirs of his wife. We cannot think that it was his purpose to so lessen the property passing to his own blood merely upon the event of the wife surviving.

It is also said that his purpose was, if his wife was the survivor, to provide for her in the generous manner in which he did, and then, having but little further interest in the property, to abandon it to the law and let it pass as it would have done under the Statute of Descent. But it may as well be said that his purpose was that the property, sub-ject to his widow's rights and the exercise of her powers, should pass only to heirs of his blood. Either conclusion necessarily rests upon the meaning which he attached to the term "heirs-at-law."

It has frequently been held by this court that the word "heirs" in a will does not necessarily have a fixed meaning. It may mean children. If it may mean children, it may also, where there are no children, mean some other one class of heirs, (not including all the heirs,) if the context of the entire will plainly shows such to have been the purpose of the testator. In the construction of a will greater latitude is allowed than in the construction of a deed, (*Webbe* v. *Webbe,* 234 Ill. 442,) and while, as above stated, the technical meaning of the word is the one which *prima facie* should prevail, yet such meaning will not be given effect to the extent of defeating an obvious general intention of the testator. (*Blackmore* v. *Blackmore,* 187 Ill. 102; *Johnson* v. *Askey, supra.*) "Heirs" and "heirs-at-law" are in a legal sense the same.

In this case we are satisfied, from all the words used in this will, that the general scheme or intention of the testator was that his heirs-at-law who were of his blood should have such portion of his property as remained after the death of himself and wife. It seems plain to us that

the words "heirs-at-law" were used by the testator in their colloquial or popular meaning and not in their technical sense. This excludes the wife.

Accordingly the decree of the superior court will be reversed and the cause will be remanded, with directions to sustain the demurrer to the bill.

*Reversed and remanded, with directions.*